UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TAYLOR SAGGIO, et al.,

                Plaintiffs,

- against -

LAUREN SPRADY, et al.,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

CV-04-777 (BMC)(WDW)

**COGAN, District Judge.**

This is a civil rights action apparently (as will be discussed below) under 42 U.S.C. §1983. The claim arises out of several incidents that occurred while plaintiff Taylor Saggio ("plaintiff") was a student at defendant Westhampton Beach Union Free School District, in which she was harassed by several fellow students.[1] She claims that the actions taken by the District in response to these incidents violated her right to a public education alleged to exist under the United States and/or New York State Constitutions. I hold that there was no infringement of federal constitutional rights and that, in any event, the individual defendants are entitled to qualified immunity. I further hold that plaintiff has failed to identify any District policy or practice that might have caused the alleged constitutional violation. Accordingly, I GRANT defendants' motion for summary judgment as to the federal claims and dismiss the state law claims without prejudice as a matter of discretion.

---

[1] Plaintiff Taylor Saggio's parents, Deborah and Carmine Saggio, are also plaintiffs in this case. However, both defendants and plaintiffs all but ignore Taylor's co-plaintiffs. There are no viable federal claims by the parents. Moreover, although plaintiff originally brought claims against Shanequa Dardeen and Lauren Spradley (whose name is misspelled in the caption as "Sprady"), those claims were previously dismissed because plaintiff failed to prosecute them.

## BACKGROUND

The facts are undisputed. Plaintiff Taylor Saggio was a student at Westhampton Beach from 2000-2003. She suffered at least three verbally or physically abusive encounters with a group of minority fellow students, principally Shanequa Dardeen and Lauren Spradley.[2]

The difficulty started on January 23, 2002, on a school bus when a male middle school student, Justin Bullock, verbally sexually harassed her. Her mother, Deborah Saggio, reported the harassment to the principal, defendant Caswell, who, after investigation, spoke to administrators at the middle school and had Bullock suspended from school for four days and from riding the school bus for about three weeks. Bullock was also required to attend counseling sessions.

The "flashpoint" incident also occurred on the school bus in April, 2002, when plaintiff attempted to intercede when Dardeen was verbally harassing the bus driver. Dardeen turned on plaintiff and began redirecting her verbal abuse at plaintiff. Dardeen was apparently a friend of Vanessa Bullock, the sister of Justin Bullock. According to plaintiff, this was the incident that started the trouble between plaintiff, Dardeen, and Dardeen's friends.

On January 10, 2003, plaintiff was attending a basketball game at school. Vanessa Bullock, Dardeen, and others of their friends confronted her in the school lobby after the game. Plaintiff testified that Vanessa Bullock jumped at her, but a security guard prevented the confrontation. The security guard's statement says that he observed

---

[2] Plaintiff, surprisingly, has submitted no direct evidence that she is Caucasian and the other students involved were minority students. I have been left to infer that from the nature of questions posed by plaintiff's attorney during examinations, and the descriptions of the incidents.

an exchange of words between the two groups and that one of plaintiff's friends approached him and complained that Vanessa Bullock's group of friends was always harassing plaintiff. The security guard asked plaintiff if everything was alright. Plaintiff responded that she was fine and that it was the other group who had the problem. As the friction between the two groups increased, the security guard placed himself between the two groups and followed them out to the parking lot, all the while instructing them to go home. Plaintiff testified that her friends escorted her to a waiting vehicle and that Bullock, Dardeen and their friends followed them into the lot. Plaintiff filed a police report later that evening. After the District's investigation, three of the students were suspended for five days, which is the maximum allowed for an initial offense under the school's regulations.

About a month later, one of Dardeen's friends, Ariel Jones, complained to an assistant principal that plaintiff had used a racial epithet under her breath. The assistant principal took plaintiff out of class and either asked her or admonished her about it. Plaintiff vehemently denied the accusation.

Things got physical about a week later, on February 26, 2003. Plaintiff was confronted in school by Dardeen, and three other girls, including Lauren Spradley. Spadley was not enrolled at Westhampton Beach, but was a BOCES student who apparently took some classes at the school or at least used it as a bus transfer point between schools. She also was apparently a friend of Dardeen. Spradley accused plaintiff of being a racist and when plaintiff denied that, Spradley attacked plaintiff, knocking her to the ground, kicking her repeatedly, and pulling her by her ponytail. A

hall monitor pulled Spradley off of plaintiff. Fortunately, plaintiff, although badly shaken, was not seriously injured and was treated at the school with an icepack.

Either Principal Caswell or plaintiff's mother called the Westhampton Police shortly after the incident and Spradley was ultimately arrested. The record does not show what she was charged with, but she was convicted, and sentenced to probation. Plaintiff also received an Order of Protection. Principal Caswell suspended Spradley for five days from using the facilities at Westhampton Beach, and arranged that she would be escorted by the bus driver when transferring buses.

Two days following this incident, plaintiff and her mother met with Principal Caswell. Plaintiff's mother demanded a "guarantee" of plaintiff's safety but Caswell responded to the effect that no one could issue a guarantee when dealing with student conflicts. Plaintiff's mother demanded a private security guard to escort plaintiff from room to room.[3] Principal Caswell declined. He offered plaintiff the following options: (1) attend classes at Eastport High School, another public school in a nearby district; (2) attend a private school of her choosing, at her cost; (3) receive home schooling by teachers at the expense of the District; or (4) continue attending Westhampton Beach. Plaintiff asserts that these options gave her no practical choice, and that she was effectively compelled to choose home schooling, which she did.

About two weeks later, Caswell organized a mediation session between the involved students, their parents, the District Superintendent, Lynn Schwartz, and a social worker, which degenerated into a shouting match. It took two or three weeks more for

---

[3] On one prior occasion, in response to a rumor that Dardeen or one of her friends was going to beat up plaintiff on a particular day, the school had permitted plaintiff to leave class a few minutes early and had a hall monitor walk her to her car at the end of the day.

4

the District to get all of plaintiff's subjects set up for home schooling, during which plaintiff was out of school. After about six weeks of home schooling, plaintiff returned to school on May 19, and attended classes through her graduation in June. She attended the graduation ceremony, received a Regents diploma, and finished in the top third of her class.

## DISCUSSION

### I. Standard of Analysis

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998).

## II. Plaintiff's Arguments

Plaintiff's opposition to the motion is hardly a model of clarity and requires considerable interpretation to understand her arguments. It appears that plaintiff is essentially complaining of two aspects of her treatment: (1) the District deprived her of her preferred schooling by "coercing" her into accepting home education instead of getting her a guard to escort her from class to class; and, as a result, (2) the mediation process and the setting up of her home education program took several weeks during which she did not attend school.

The problem with ascertaining the legal basis of plaintiff's theory is that it is not set forth anywhere, neither in plaintiff's complaint nor in her opposition to the motion. The complaint comes closest when it alleges that the action "arises under the United States Constitution Including [sic] the 6th [sic] and 14th Amendments and under the Civil Rights [sic], Title 40 to the United States Code." There is also some terminology of procedural due process set forth in her second cause of action. I can only assume that the end of the quoted sentence was an intended reference to the Civil Rights Act of 1871, 42 U.S.C. §1983. I have to further assume that the reference to the "6th" Amendment was

meant to be to the due process clause of the 5th Amendment. That is the way defendants have interpreted the complaint in their motion, and indeed, plaintiff's argument in opposition appears content with that reading. I am therefore going to address the case on that basis.[4]

Even then, however, the matter is not entirely clear. Plaintiff never articulates her constitutional theories much beyond her complaint. There is utilization of procedural due process terminology in one of the causes of action, but the rest just refer to plaintiff's alleged right to "a free, public school education in accordance with the Constitution of the State of New York and of the United States of America." Reading the complaint and plaintiff's opposition to this motion in their most favorable light, it appears that plaintiff may be attempting to state two theories by which the actions described above violated her constitutional rights.

## III. Equal Protection

I infer that plaintiff is attempting to state an equal protection claim from the following statement in her brief:

> The Courts, in reviewing the equal rights protections under Amendment 14, has determined that "where the State has undertaken to provide (education) is a right which must be made available to all on equal terms. Brown, et al. v. the Board of Education of Topeka, 347 US 483, 74 S. Ct. 686, (1954), here as noted the superintendent has indicated that this is a

---

[4] There is a strong argument that §1983 is unavailable to plaintiff, since Congress has enacted a comprehensive remedy dealing with educational discrimination in the Equal Education Act of 1974, 20 U.S.C. § 1703, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. See Bruneau v. South Kortright Central School District, 163 F.3d 749, 756-58 (2d Cir. 1998) (no claim for educational gender discrimination under §1983 in light of Title IX) (citing, Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); Kamal v. Hopmayer, No. 05 Civ. 8164, 2006 WL 3197161 (S.D.N.Y. Nov. 2, 2006); but see Barmore v. Aidala, No. 04 Civ. 0445, 2006 WL 1978449, *10 (N.D.N.Y. 2006) (questioning the applicability of Bruneau to Title VI). But since defendants here have failed to raise this argument and plaintiff does not assert a claim under Title VI, I have no occasion to address it. See Bungert v. City of Shelton, No. 02 Civ. 1291, 2005 WL 2663054, *1 n. 2 (D. Conn. Oct. 14, 2005).

7

> racial issue, that in fact the black student(s) did both physically and
> verbally harass Taylor, resulting in physical harm and her ability to walk
> freely, without fear, on school premises.

(sic throughout).

To maintain a claim for equal protection, a plaintiff "must come forward with at least some credible evidence that the actions of the individual [defendants] were motivated by racial animus or ill-will." Grillo v. New York City Transit Authority, 291 F.3d 231, 234 (2d Cir. 2002). See also Barmore v. Aidala, No. 04 Civ. 0445, 2006 WL 1978449, *10 (N.D.N.Y. 2006). In addition, plaintiff must show that she was treated differently than other similarly situated individuals as a result of her race. See Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996).

Neither of these requirements is met here. As to the first requirement, there is not a scintilla of evidence that could support a conclusion that race played any role in the District's determination of how to deal with the hostility between these students. Similarly, there is no evidence at all that the response to plaintiff was based on the fact that she is Caucasian. Although the hostility between these girls ultimately involved accusations of racism by the minority students against plaintiff (which accusations she consistently denied), there is no indication that the District took or did not take any action as a result of the fact that the students were of different races. Plaintiff does not point to a single statement or action by any school official showing favoritism or bias based on race. The punishment against plaintiff's adversaries – and there was punishment – may not have been as severe as plaintiff might have liked, but there is no showing that the steps taken by the District to deal with this problem were in any way racially motivated or limited as a result of racial considerations.

8

As to the second criteria, plaintiff has not asserted a single fact suggesting that she would have been treated differently if she were a minority student. She cites no comparable incidents involving a minority student victim at all, let alone incidents in which a minority student received an escort from class to class (or any other student for that matter), as plaintiff requested, or was given different choices than plaintiff received here, or in which a minority student's white adversaries were given a harsher penalty than plaintiff's adversaries. Even as a more general matter, plaintiff cites nothing in the District's past practices to indicate a race-based approach to resolving altercations between students of different races.

What plaintiff has done here is simply assume that because she and her assailants are of different races, the District's actions must have been stacked against her because of her race. The Second Circuit has repeatedly rejected these kinds of naked inferences. See e.g., Grillo, 291 F.3d at 235 (affirming summary judgment because the plaintiff did "little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient") (quoting Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001)).

Plaintiff has thus failed to offer any evidence that would raise an issue concerning her right to equal protection.

## IV.   Due Process

Plaintiff's brief does not distinguish between procedural and substantive due process. Under either analysis, however, she has to demonstrate deprivation of a protectible property interest.

The starting point for this analysis is Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), where the Supreme Court held that state law can create an entitlement to a public education, and that such a right, once created, cannot be taken away without due process. The Court held that, except in emergency situations, a student cannot be suspended for alleged misconduct without notice and an opportunity to present his or her side of the story. Goss involved 10-day suspensions where, in some instances, no reason was given for the suspension except that the student was present when others caused a disturbance at school.

Although Goss recognized a property interest if created by state law, the argument that a school district can violate substantive due process by not protecting students from harassment has been generally rejected or, at least, the atmosphere that must exist for such a violation is much more extreme than that present here. See generally, Davis v. Monroe County Board of Education, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (school boards maintain flexibility in dealing with harassment under Title IX).

Even assuming, *arguendo,* that school officials may be liable for failing to remedy peer-to-peer racial harassment, that is not what plaintiff claims here. Plaintiff claims that she was deprived of her right to an education without due process when she was "coerced" into utilizing home tutoring for a short period of time. Like Ohio in Goss, New York law establishes a right to a public education. N.Y. Educ. L. §3202(1). However, the primary distinction between Goss and the instant case, of course, is that plaintiff was not suspended. No disciplinary charges were filed against her. No accusation of wrongdoing was made against her. Most importantly, the District did not

exclude her from attending school. It thus cannot be said that the District infringed upon her right to an education.

To show an infringement of her property interest, plaintiff argues that she was "coerced" into accepting home schooling because the school gave her no viable alternatives. She is thus effectively equating the options of attending a neighboring school or accepting home schooling with an imposed suspension. There are several deficiencies in this argument.

First, the presumption that the state must give her an education tailored to her liking is wrong. She has a right under State law to an education, but there is nothing under State law providing that such an education cannot include a home schooling component or assignment to a neighboring school to defuse a discipline problem, and thus there has been no deprivation of a federally protected property right. See e.g. Seamons v. Snow, 84 F.3d 1226 (10th Cir. 1996) (student had no constitutionally protected property interest in specific advanced placement courses and interscholastic activities).

Second, even if she did have a property interest in receiving education in her school as opposed to some other school or at home, the District did not impose the home schooling option – it merely offered it. It was plaintiff's choice to take it. The "coercion" argument is unavailing in light of plaintiff's failure to submit any evidence as to why she was forced to choose home schooling over the other options. See Seamons v. Snow, 84 F.3d at 1234 (where plaintiff admitted to making the decision to transfer schools when given the option, he failed to state a deprivation of his right to an education without due process).

In so holding, the Court is sympathetic to plaintiff's reluctance to return to a school where she had been assaulted. But she offers no reason, other than that all her friends attended Westhampton, why she did not want to attend Eastport High School, which was one of the options. Moreover, while plaintiff's apprehension is understandable, the fact is that the girl who assaulted her was not only suspended, but she was escorted from bus to bus, criminally arrested and charged, and an Order of Protection was entered. Plaintiff's eventual return to school without incident after less than two months of home schooling shows that it was a choice that plaintiff could have made earlier, notwithstanding her reluctance to do so.[5] Plaintiff was not unreasonable in selecting home schooling over returning to school or going to Eastport, but neither was the District unreasonable in giving her an alternative of staying at the school if that was her choice.

In fact, plaintiff has offered no viable alternative as to what the school should have done that would have been to her satisfaction. The notion of having a guard to escort her, the only demand that she made at the time, might be an enhancement, but would not have been a guarantee of security, and in any event is simply not constitutionally required.

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and §1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

---

[5] Plaintiff's attorney appears to argue that when plaintiff showed up at school two days after the attack for a blood drive, Principal Caswell took her out of the line and required her to leave until the mediation could be held, presumably for her safety. If that is what plaintiff's attorney is asserting, it is a distortion of the record. Plaintiff's testimony is clear that the Principal took her to his office because her mother was there, and the three of them jointly decided that it would be best for plaintiff to stay home until the mediation. It was not in any way an imposed absence.

12

Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Thus, where a plaintiff asserts that school officials failed to appropriately discipline students perpetrating the harassment, the Court must give substantial deference to school administrators' determinations. See Davis, 526 U.S. at 648 (courts must "refrain from second-guessing the disciplinary decisions made by school administrators"). The standard is not one of mere reasonableness that "transforms every school disciplinary decision into a jury question." Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp .2d 284, 294 (E.D.N.Y. 2004). As the Second Circuit has explained: "The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant [itself]. Thus ... a plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur." Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140 (2d Cir. 1999). "[T]he ultimate failure of [school official's measures to end the harassment by other students] does not mean that Plaintiffs have created a jury question with regard to deliberate indifference." Yap, 303 F.Supp.2d at 294 (citing Crispim v. Athanson, 275 F.Supp.2d 240, 248 (D.Conn.2003) (granting summary judgment in spite of an argument that the school's remedial and preventative measures proved insufficient)). This Court thus cannot be placed in a position where it is second guessing school administrators as to how best to deal with this problem when the undisputed facts show that they were actively involved and making informed judgments.

Aside from hiring a guard for plaintiff, plaintiff appears to suggest that the District should have more rigorously enforced its Disciplinary Code. In other words, plaintiff claims that her rights were violated because the discipline meted out against the students who harassed her was not sufficiently severe. It is not at all clear that plaintiff

has standing to argue how the Disciplinary Code should have been applied to her fellow students as opposed to herself. But even assuming the viability of this argument as a matter of constitutional law, plaintiff does not specify what additional action the District should have taken. A review of the Code shows substantial compliance with its terms – the offenders received a 5-day suspension, which is the maximum suspension that can be afforded. Although there is an option to convene an additional hearing and seek expulsion, that is within the discretion of the District's officials; once again, it would be improper for this Court to substitute its judgment for theirs.

To the extent plaintiff is alleging deprivation of procedural due process, again assuming arguendo that she had a property interest in attending the school of her choice rather than another school or home schooling, that claim fails for the same reasons. This is not a case where plaintiff was suspended from school without notice or a hearing. Rather, she was not suspended at all. She was involved in the decisional process concerning her education at every step of the way, and ultimately was the one who made the decision to opt for home schooling. From a procedural standpoint, there could be no more process to which plaintiff was due.[6]

## V. Qualified Immunity

Principal Caswell, Dr. Cook (who is apparently the former principal of Westhampton High School), and Superintendent Lynn Schwartz are named as defendants

---

[6] As noted above, see fn. 4, supra, plaintiff has failed to plead a claim under Title VI and defendant has failed to raise that omission. Without even an allegation in the complaint that the District receives federal funds, I have no basis for applying Title VI. However, if plaintiff had wanted to assert a hostile racial environment fostered or condoned by defendants, see Bryant v. Independent School Dist., 334 F.3d 928 (10th Cir. 2003), it would fail on this record. Among other problems, plaintiff has not established a prima facie case of a hostile educational environment because she did not suffer an adverse impact to her education. Moreover, as discussed above, there is a complete absence of evidence that could raise any issue of discriminatory intent, which is required for either a Title VI claim or a §1983 claim. See Deleon v. Putnam Valley Bd. of Educ., No. 03 Civ. 10274, 2006 WL 236744, *11 (S.D.N.Y. Jan. 26, 2006).

in the complaint. Principal Caswell's role is described above. Dr. Cook is nowhere mentioned in either defendants' motion or plaintiff's opposition. Superintendent Schwartz's role is limited to participation in the attempted mediation among the various students and their parents after the final incident. In any event, because the only acts of which plaintiff complains are discretionary functions of school officials, and because plaintiff has alleged no facts that could overcome qualified immunity, the claims against these individuals would have to be dismissed even if plaintiff had properly alleged a denial of her constitutional rights. "If the law ... was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff has pointed me to no authority establishing the wrongfulness of the defendants' actions.

## VI. Monell Liability

There is no vicarious liability for constitutional violations. Assuming that the District is subject to liability under § 1983, to prove her claim, plaintiff must raise an issue of fact as to whether the deprivation was the result of an official policy, custom, or practice of the District under Monell v. Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff offers no probative evidence on this point. The closest she gets is to point to the Disciplinary Code, but as noted above, she cannot point to any violation of the procedures set forth there; she simply wishes that the District had exercised the discretion that the Code gives it to impose a higher standard of discipline.

The exercise of discretionary judgment by District officials does not constitute a policy or practice that could have caused a deprivation of constitutional rights.

VII. **State Law Claims**

Since plaintiff has no viable federal claims and this matter has not proceeded to trial, I decline to exercise supplemental jurisdiction over the state law claims. I do not think judicial economy will be advanced by trying the case here as opposed to state court, there are no questions of federal policy, and since the case involves the conduct of state actors under state law, comity suggests that the state courts should resolve it. I therefore dismiss the state law claims without prejudice. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED. Plaintiff's federal claims are dismissed with prejudice, and plaintiff's state claims are dismissed without prejudice to refiling in state court.

**SO ORDERED.**

Dated: Brooklyn, New York
February 16, 2007

s/ Judge Brian M. Cogan

U.S.D.J.